## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| ZUFFA, LLC, *a/k/a The Ultimate Fighting Championship*, Plaintiff, | )<br>)<br>) |
| vs. | ) CIVIL ACTION NO. 10-00085-KD-C |
| FAKHRY AL-SHAIKH and AF, LLC, Defendants. | )<br>)<br>)<br>) |

### ORDER

This matter is before the Court on the Plaintiff's "Motion for Default Judgment" against "Defendant Fakhry Al-Shaikh individually and as officer, director, shareholder and/or principal of AF, LLC, d/b/a The Purple Café, a/k/a Purple Café;" and against "Defendant AF, LLC, d/b/a The Purple Café, a/k/a Purple Café." (Doc. 36).

### I.   Background

On February 22, 2010, Plaintiff initiated a three (3) count copyright infringement and piracy action against Defendant Jamal Al-Shaikh and Defendant Fakhry Al-Shaikh individually, and as officers, directors, shareholders and/or principals of The Purple Onion, LLC, d/b/a The Purple Café, a/k/a Purple Café (hereinafter referred to as "The Purple Onion"), and Defendant The Purple Onion, LLC, d/b/a The Purple Café, a/k/a Purple Café. (Doc. 1). Plaintiff alleges that the Defendants willfully violated 47 U.S.C. § 605(a) and 553 and 17 U.S.C. § 501, because they unlawfully intercepted and exhibited (broadcasted) an October 24, 2009 UFC #104 program, the "Velasquez v. Rothwell fight" ("the program") at the commercial establishment The Purple Onion, 326 Azalea Road, Mobile, AL, 36609, for the purposes of direct or indirect commercial advantage or private

1

financial gain without paying Plaintiff for the rights to exhibit the event.

Specifically, concerning Count I (47 U.S.C. § 605(a)), Plaintiff alleges that the broadcast program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. Plaintiff or their agents, for a licensing fee, entered into agreements with various entities in the State of Alabama, to allow them to publicly exhibit the broadcast to their patrons. The Defendants, however, exhibited the broadcast willfully and for purposes of direct or indirect commercial advantage or private financial gain without paying Plaintiff for the rights to exhibit the program. Defendants' unauthorized reception and publication or use of communication such as the transmission of the program for which Plaintiff has the distribution rights thereto was prohibited such that they violated Section 605(a).

Regarding Count II (47 U.S.C. 553), Plaintiff alleges that with full knowledge that the broadcast program was not to be received and exhibited by entities unauthorized to do so, the Defendants and/or their agents, servants, workmen or employees did exhibit the broadcast program at The Purple Onion on October 24, 2009 willfully and for purposes of direct or indirect commercial advantage or private financial gain. Pursuant to 47 U.S.C. § 553, the unauthorized reception, interception and exhibition of any communications service offered over a cable system such as the transmission for which Plaintiff had the distribution rights thereto, was prohibited. The Defendants individually, willfully and illegally intercepted the broadcast program when it was distributed and shown by cable television systems at The Purple Onion on October 24, 2009, in violation of Section 553.

As for Count III (17 U.S.C. § 501), Plaintiff alleges that it is the copyright owner of the broadcast UFC #104 program including all undercard matches and the entire television broadcast

scheduled for October 24, 2009 via closed circuit television and via encrypted satellite signal. The broadcast originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. As a copyright holder of the rights to the UFC #104 broadcast, Plaintiff has rights to the broadcast including distribution rights. The Defendants did not obtain the proper authority or license from Plaintiff, or its authorized agents, to publicly exhibit UFC #104 broadcast on October 24, 2009. Rather, with full knowledge that the UFC #104 broadcast can only be exhibited within a commercial establishment by the purchasing of a license from Plaintiff or its authorized agents, the Defendants and/or their agents, servants, workmen or employees illegally intercepted the broadcast and exhibited it at The Purple Onion on October 24, 2009. Thus, Plaintiff asserts that the Defendants unlawfully obtained the UFC #104 broadcast and publicly exhibited it without paying the appropriate licensing fee to Plaintiff or its authorized agents, and thus willfully violated 17 U.S.C. § 501.

Plaintiff served a copy of the Complaint on Defendant Fakhry Al-Shaikh (via personal service) at 6721 Stonebrook Drive, North, Mobile, Al, 36695, on March 23, 2010; his Answer was due by April 13, 2010. (Doc. 11). Defendant Fakhry Al-Shaikh did not file an Answer or otherwise appear or respond by April 13, 2010.

In July 2010, Plaintiff amended its complaint to add Defendant AF, LLC. (Docs. 21, 22). Plaintiff filed a Certificate of Service indicating that it had served (via regular mail) a copy of the Amended Complaint on Defendant Fakhry Al-Shaikh (Doc. 24). On July 22, 2010, Plaintiff served a Summons and copy of the Amended Complaint on Defendant AF, LLC (via personal service), at 3964 Government Boulevard, Mobile, AL, 36693, such that Defendant AF, LLC's Answer was due by August 12, 2010. (Doc. 26).

On November 15, 2010, Plaintiff filed an Application for entry of default, for failure to plead or otherwise defend, against Defendant Fakhry Al-Shaikh individually and as officer, director, shareholder and/or principal of The Purple Onion, LLC and AF, LLC; and against Defendant AF, LLC, d/b/a The Purple Café, a/k/a Purple Café; and Defendant AF, LLC, d/b/a The Purple Café, a/k/a Purple Café. (Doc. 28). In so doing, Plaintiff represented via Affidavit of counsel, that it had served Defendant Fakhry Al-Shaikh on July 15, 2010; and that it had served Defendant AF, LLC on July 22, 2010. (Doc. 28-1 at 2 at ¶2). Plaintiff's application for entry of default included a Certificate of Service indicating that it had served a copy of the default documents on Defendant Fakhry Al-Shaikh and Defendant AF, LLC. (Doc. 28-3).

On November 17, 2010, the Clerk entered a default, in part, against Defendant Fakhry Al-Shaikh and Defendant AF, LLC. (Doc. 29).

On March 1, 2011, Plaintiff filed the present motion for default judgment. (Doc. 36). In so doing, Plaintiff seeks entry of a default judgment against Defendant Fakhry Al-Shaikh and Defendant AF, LLC,[1] jointly and severally.

## II. Default Judgment Standard

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides, in relevant part, as follows with regard to entering a default judgment:

> **(b) Entering a Default Judgment.**
> \* \* \*
> **(2)** *By the Court.* In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with

---

1 Defendant The Purple Onion, LLC was dismissed without prejudice on February 23, 2011. (Doc. 34). Defendant Jamal Al-Shaikh was dismissed with prejudice on March 16, 2011. (Doc. 38).

written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

    (A) conduct an accounting;
    (B) determine the amount of damages;
    (C) establish the truth of any allegation by evidence; or
    (D) investigate any other matter.

FED.R.CIV.P. 55(b)(2).

Courts generally require some notice to be given to defendants between the time of service of process and entry of a default judgment. See, e.g., Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Edmonds, Slip Copy, 2009 WL 1158988, *2, n.3 (S.D. Ala. Apr. 29, 2009); Capitol Records v. Carmichael, 508 F. Supp. 2d 1079, 1083, n.1 (S.D. Ala. 2007). Additionally, the Eleventh Circuit has held that although "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact. The defendant, however, is not held to admit facts that are not well-pleaded or to admit conclusions of law." Tyco Fire & Sec., LLC v. Alcocer, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (per curiam) (citations and internal quotations omitted). Further, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint . . . actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Id. (emphasis omitted). When assessing damages in connection with a default judgment, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2007).

### III.     Copyright Infringement under 17 U.S.C. § 501

In the Complaint and Amended Complaint, Plaintiff alleged a third count against the

Defendants under Section 501 for copyright infringement.  However, Plaintiff does not seek entry of a default judgment against these defendants pursuant to this statute or under this claim (Count III), and moreover, does not seek an award of damages or attorneys' fees and/or costs pursuant to Section 501.  Indeed, Plaintiff makes no mention of Section 501 in the default judgment pleadings. As such, the Court deems Plaintiff's Section 501 claim (Count III) voluntarily **ABANDONED** and will not address it further apart from **ORDERING** that Count III is **DISMISSED without prejudice.**

## IV.    Piracy under 47 U.S.C. § 605 and 47 U.S.C. § 553

Plaintiff asserts a complaint (as amended) against the Defendants for piracy under the Federal Communications Act for violations of two (2) different statutory provisions 47 U.S.C. § 605[2] and 47 U.S.C. § 553.[3]  As grounds for the motion for default judgment, Plaintiffs contend that the default previously entered against these defendants is an admission that "they knowingly and willfully intercepted the programming, and offered it to patrons of their establishment for private financial gain or commercial advantage." (Doc. 36-5 at 4-5).  Plaintiff adds that the exhibition of the program by the Defendants was "willful[] and for purposes of direct or indirect commercial advantage or private financial gain and with the intent of willfully defrauding Plaintiff of revenue."

---

2 Section 605(a) provides as follows: "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." "Although the statute uses the term 'radio,' all courts construing [Section] 605(a) have assumed that the statute also applies to transmissions and interception of satellite cable programming." See 47 U.S.C. § 605(b).  See also e.g., DirectTV, Inc. v. Trawick, 359 F. Supp. 2d 1204, 1207 at n.6 (M.D. Ala. 2005); United States v. Howard, 13 F.3d 1500, 1501 (11th Cir. 1994) (affirming convictions under Section 605 for unauthorized interception of encrypted satellite signals).

3 Section 553(a)(1) prohibits "intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

(Id. at 5). In ruling on a motion for default judgment, however, the Court must still examine in detail a defendant's liability under the causes of action alleged. See, e.g., DirectTV, Inc. v. Trawick, 359 F. Supp. 2d 1204, 1206 (M.D. Ala. 2005).

### A. Liability

Plaintiff alleges violations of both Section 553 and 605. To establish a violation of Section 605 or Section 553, Plaintiff must establish that (1) the Defendants intercepted the program, (2) Defendants did not pay for the right to receive the transmission, and (3) Defendants displayed the program to patrons of their commercial establishment. See, e.g., J&J Sports Prod., Inc. v. Just Fam, LLC, Slip Copy, 2010 WL 2640078, *2 (N.D. Ga. Jun. 28, 2010).

The Complaint and Amended Complaint, together with the Affidavit of Auditor Gary R. Smith, the Affidavit of Joe Hand, Jr. (President of the exclusive distributor for Plaintiff), the Affidavit of Plaintiff's counsel and the Affidavit of the Executive Vice-President of Plaintiff Zuffa, LLC, establish the following. Plaintiff owns the distribution rights to the UFC #104 program. (Docs. 1, 22). Commercial establishments could lawfully show this program to their patrons if contractually authorized to do so by the Plaintiff and/or its agents. In order to lawfully broadcast and publicly exhibit this program on October 24, 2009 to The Purple Onion's patrons, the Defendants were required to obtain the proper authority or license from Plaintiff, or its authorized agents. The cost for the Defendants to legally purchase and broadcast the program was at least $900.00 based on an occupancy of 0-50 patrons. (Doc. 36-5 at 19 (Rate Card); Doc. 36-3 (Aff. J.Hand, Jr.; Doc. 36-1 (UFC Piracy Affidavit of Smith)). Instead, as confirmed by investigative auditor Gary R. Smith (hired by Plaintiff), the Defendants unlawfully obtained the UFC #104 broadcast and publicly exhibited it, via television, at the commercial establishment The Purple

7

Onion located at 326 Azalea Road, Mobile, AL, 36609, without paying the appropriate licensing fee to Plaintiff or its authorized agents. (Id.; see also Doc. 36-1 (Video taken by Smith)). The Defendants had not contracted with Plaintiff and/or its agents to exhibit or broadcast the program. (Docs. 1, 22). Smith did not pay a cover charge to enter the establishment. (Doc. 36-1 at 15-16 (UFC Piracy Affidavit of Smith)). Smith recorded that 42 patrons were present at The Purple Onion during the broadcast of the program. (Id.) Smith noted that there was a Dish Network satellite dish visible, and a cable or satellite receiver on the premises. (Id.)

Additionally, by virtue of their default, Defendants have admitted they exhibited the UFC #104 program, without Plaintiff's authorization, to their patrons at The Purple Onion. Thus, Plaintiff has sufficiently pleaded its case so as to establish Defendants' liability under both Section 553 and 605.

However, when a court finds that a defendant's conduct has violated both Section 553 and 605, a plaintiff can only recover under one statute.[4] J&J Sports Prod., Inc., v. Allen, Slip Copy, 2011 WL 941502, *2 (N.D. Ga. Mar. 14, 2011); Just Fam, 2010 WL 2640078, *2; J&J Sports Prods., Inc. v. Blackwell, Slip Copy, 2009 WL 2171897, *2 (M.D. Ala. Jul. 21, 2009) (providing that "[t]he court is unpersuaded that a perpetrator would commit double piracy by using both a cable box and a satellite to broadcast a single simultaneous program[]"); Kingvision Pay-Per-View Corp., Ltd. V. Wright, 2006 WL 4756450, *3 n. 8 (M.D. Fla. Oct. 27, 2006). In this case, Plaintiff concedes that it

---

[4] Plaintiff acknowledge that there is a split among the circuits as to whether a defendant can be held liable under both Section 605 and Section 553 for the same conduct, as well as to what activity each section covers (cable v. satellite) and how to reconcile overlap in the statutory provisions and that the Eleventh Circuit has yet to address the issue (whether Section 605 applies to cable theft and both Section 605 and 553 cover the interception of cable programming transmitted over a cable network). (Doc. 36-5 at 5-7). See, e.g., J&J Sports Prod., Inc. v. Allen, Slip Copy, 2011 WL 941502, *2 (N.D. Ga. Mar. 14, 2011) (discussing International Cablevision v. Sykes, 75 F.2d 123 (2d Cir. 1996) and United States v. Norris, 88 F.3d 462, 466 (7th Cir. 1996)).

is "unable to determine exactly how Defendants intercepted plaintiff's signal, i.e., via coaxial cable or satellite." (Doc. 36-5 at 4). "It is impossible for Plaintiff to determine precisely how the Defendants in this action pirated" the program "without further discovery or an admission from Defendants….[h]owever, an auditor witnessed the Program being exhibited at Defendants' commercial establishment and witnessed a satellite dish at the premises." (Id. at 8). Plaintiff adds that this is due, in great part, to the Defendants' failure to appear or defend in this case and thus, not having the benefit of discovery in order to determine how the unlawful interception occurred.[5] Nevertheless, Plaintiffs allege in the Amended Complaint that "it is logical to conclude that Defendants either used an illegal satellite receiver, misrepresented their business establishment as a residence or removed an authorized receiver from one location to a different business location in order to intercept Plaintiff's broadcast." (Doc. 22 at 5).

Due to the circumstances surrounding this case, the Court elects to give Plaintiff the benefit of the doubt and not fault Plaintiff for failing to plead the particular manner of interception since this may be exclusively in Defendants' knowledge. See, e.g., Allen 2011 WL 941502, *3; Joe Hand Promotions, Inc. v. Blanchard, Slip Copy, 2010 WL 1838067, *2 (S.D. Ga. May 3, 2010); Joe Hand Promotions, Inc. v. McBroom, Slip Copy, 2009 WL 5031580, *2 (M.D. Ga. Dec. 15, 2009). Moreover, Plaintiff has demonstrated through the Smith Affidavit that the Defendants intercepted or

---

5 According to Plaintiff, illegal methods for pirating a signal include but are not limited to: 1) splicing an additional coaxial cable line or redirecting a wireless signal from an adjacent residence to a business establishment; 2) commercial misuse of cable or satellite by registering same as a residence when it is a business; 3) taking a lawfully obtained box or satellite receiver from a private residence into a business and using the box to exhibit an event that was purchased residentially. Additionally, Plaintiff asserts that emerging technologies such as broadband or internet broadcast, as well as "slingbox" technology (allows a consumer to literally sling programming from his personal home cable or satellite systems into his computers) can allow commercial misuse of residential broadcasting feeds through the internet from anywhere in the world. Plaintiff cannot determine the manner in which the UFC #104 broadcast was pirated without an admission by the Defendants or the benefit of discovery.

received an unauthorized broadcast and willfully used same. See, e.g., Setanta Sports N.A., Ltd. v. Pickford, Slip Copy, 2010 WL 2432088, *3 (M.D. Fla. May 21, 2010). Further, most significantly, Plaintiff "elects to recover" only under Section 605 (Doc. 36-5 at 7), not Section 553. The Court notes as well, that when a defendant has violated both Sections 553 and 605, most courts award damages under Section 605 because that provision "allows for greater recovery by plaintiffs." See, e.g., Entertainment by J & J, Inc. v. Al-Waha Enters., 219 F. Supp. 2d 769, 775 (S.D. Tex. 2002).[6] Accordingly, in light of Plaintiff's Section 605 selection,[7] the Court need not resolve the issue of which section applies to cable versus satellite, and finds the Defendants liable under Section 605 for the unauthorized reception and publication of the program for which Plaintiff holds the distribution rights.[8]

Further, to hold Defendant Fakhry Al-Shaikh vicariously liable in his individual capacity and as officer, director, shareholder and/or principal of The Purple Onion and/or Defendant AF, LLC under Section 605, Plaintiff must show that Fakhry Al-Shaikh had a "right and ability to supervise

---

6 The penalties and damages available under Section 605 are far greater than those available under Section 553, and attorneys' fees and costs are mandatory under Section 605, but only discretionary under Section 553. See Setanta Sports N.A., Ltd. v. Pickford, Slip Copy, 2010 WL 2432088, *2 at n.5 (M.D. Fla. May 21, 2010).

7 As noted in J&J Sports Prod., Inc. v. Arboleda, Slip Copy, 2009 WL 3490859, *4 (M.D. Fla. Oct. 27, 2009):

> ….Although Plaintiff originally also alleged a violation of the Cable and Television Consumer Protection and Competition Act, 47 U.S.C. § 553, for interceptions by way of cable systems, Plaintiff elects to receive damages exclusively under § 605. S*ee, e.g., J & J Sports Productions, Inc. v. Blackwell*, Case No. 2:07-cv-1058, 2009 WL 2171897, *2 (M.D.Ala. Jul.21, 2009) (holding that a single broadcast cannot violate both codes sections, § 605 (satellite) and § 553 (cable))…..

8 "Satellite signals are considered 'radio communication.'" J&J Sports Prod., Inc. v. Allen, Slip Copy, 2011 WL 941502, *2 at n.3 (N.D. Ga. Mar. 14, 2011).

the violations, and that he had a strong financial interest in such activities." J&J Sports Prods., Inc. v. Arboleda, Slip Copy, 2009 WL 3490859, *5 (M.D. Fla. Oct. 27, 2009). By virtue of the default, Fakhry Al-Shaikh has admitted that he had supervisory control over The Purple Onion's decision to show the program and that he received financial benefit from it. Id. Thus, Plaintiff is entitled to joint and several liability for Section 605 damages against Defendant Fakhry Al-Shaikh in an individual and corporate capacity.[9]

Accordingly, it is **ORDERED** that the Plaintiff's motion for default judgment (Doc. 36) against Defendant Fakhry Al-Shaikh individually and as officer, director, shareholder and/or principal of AF, LLC, d/b/a The Purple Café, a/k/a Purple Café, and Defendant AF, LLC, d/b/a The Purple Café, a/k/a Purple Café, is **GRANTED**, as outlined by the terms of this Order.

As noted *supra*, Plaintiff has selected to recover damages *only* pursuant to Section 605 and because this Court finds Plaintiff has sufficiently established the Defendants' liability under Section 605(a), the appropriate damages will be determined in light of that section.

### B. Section 605 Damages

The Court may only award damages for default judgment without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation." Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985). Under such circumstances, the record must "adequately reflect[] the basis for award via...demonstration by detailed affidavits establishing the necessary facts." Id. at 1544. In this case, the Court finds a

---

9 "It appears that joint and several liability is available for violations of the Communications Act." Kingvision Pay-Per-View Corp., Ltd. v. El Torito Supermarket, Inc., 2007 WL 1794158, *3 (M.D. Fla. Jun. 19, 2007); Cable/Home Comm. Corp. v. Network Prod., Inc., 902 F.2d 829, 852 (11th Cir. 1990) (declining to disturb award of joint and several damages between corporate and individual defendants).

hearing unnecessary because Plaintiff has submitted an adequate record from which the undersigned can calculate appropriate damages, particularly as they are statutory in nature.

Under Section 605,[10] a court may grant injunctive relief, award damages, and direct the recovery of full costs, including reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B). An aggrieved party may then elect to recover actual or statutory damages. 47 U.S.C. § 605(e)(3)(C); McBroom, 2009 WL 5031580, *3. The statute authorizes damages for "each violation of subsection (a) of this

---

[10] Section 605(e) provides as follows: (e) Penalties; civil actions; remedies; attorney's fees and costs; computation of damages; regulation by State and local authorities

\* \* \*

(3)(A) Any person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction.

(B) The court--

\*\*\*

(ii) may award damages as described in subparagraph (C); and

(iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

(C)(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;

(I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or

(II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

(ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section….

section ... in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). If the violation was committed "willfully and for the purpose of commercial advantage or private financial gain," the court may award up to $100,000. 47 U.S.C. § 605(e)(3)(C)(ii). Attorney's fees and costs are mandatory as the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).

In this case, Plaintiff elects to receive statutory damages pursuant to Section 605(e)(3)(C)(i)(II), in addition to Section 605(e)(3)(C)(ii) which provides for enhanced statutory damages where the violation was willful and committed for direct or indirect commercial advantage or private financial gain. See *supra*. Specifically, Plaintiff seeks $10,000 for the violation of Section 605(e)(3)(C)(i)(II) and enhanced damages in the amount of $20,000 for the violation of Section 605(e)(3)(C)(ii), against each defendant, jointly and severally.

### 1. **Statutory Damages under Section 605(e)(3)(C)(i)(II)**

Under Section 605(e)(3)(C)(i)(II), a court can award between $1,000-$10,000 per violation. Plaintiffs seeks the maximum against each of the Defendants, jointly and severally.

Determining the appropriate level of damages (within the ranges provided by the statute) is left to the discretion of this Court. "The Eleventh Circuit has not addressed a uniform formula for calculating damages under [S]ection 605." McBroom, 2009 WL 5031580 at *4. Typically, courts apply one of two methods: 1) award damages as a flat sum; and 2) other courts – "particularly those within the Eleventh Circuit" award the plaintiff "the license fee the defendant, based on its maximum capacity, would have paid if it had legally purchased the event." Id.; Blanchard, 2010 WL 1838067, *3 (citing McBroom and Arboleda). However, some courts will, "[w]hen the exact number

of patrons is known ... base the award on the number of patrons in the establishment who viewed the unauthorized showing multiplied by a number set by the court." J&J Sports Productions v. Ribeiro, 562 F. Supp. 2d 498, 501-02 (S.D.N.Y. 2008). "This number varies widely from $20[.00] to $300[.00] [per patron], although most courts set a number around $50[.00]." Id. at 502. This Court elects to follow the number of patrons approach.

The Court concludes that statutory damages are appropriate in this case because the Defendants had to undertake affirmative and willful steps to intercept and illegally broadcast the program and such damages will deter others from unlawful broadcasts. Additionally, according to the Harris Affidavit, on October 24, 2009, the unauthorized broadcast program was unlawfully shown, via television, to approximately 42 patrons. At $50.00 per patron, the Court finds the damages to be $2,100. Thus, the Defendants jointly and severally owe Plaintiff the sum of $2,100.00. Accordingly, as detailed herein, it is **ORDERED** that the statutory damage amount of **$2,100** is awarded in favor of Plaintiff and jointly and severally against the Defendants under Section 605(e)(3)(C)(i)(II).

    2.    **Enhanced Statutory Damages under Section 605(e)(3)(C)(ii)**

Plaintiff asserts that it is entitled to additional statutory damages up to the maximum statutory enhanced damages amount of $100,000 (in the Court's discretion) for the willful unlawful interception of the UFC #104 program on October 24, 2009 for purposes of direct or indirect commercial advantage or private financial gain. Plaintiff alleges that the Defendants' violation of Section 605 was willful and specifically requests $20,000, jointly and severally as to each defendant, in enhanced statutory damages pursuant to Section 605(e)(3)(C)(ii).

Under the statute, enhanced damages may be awarded when the violation was "committed

willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). "Courts have found that willfulness under section 605 is 'established by the fact that an event is broadcast without authorization.'" McBroom, 2009 WL 5031580, at *5 (citing Joe Hand Prods., Inc. v. Leon, 2007 WL 4097412, at *2 (N.D. Ga. Oct. 31, 2007)). See also e.g., Al-Waha, 219 F. Supp. 2d at 776 (noting "the low probability that a commercial establishment could intercept [a pay-per-view event] broadcast merely by chance," so that in these types of cases such an interception should be found willful and for the purposes of commercial advantage).

In determining the amount of enhanced damages to award under Section 605(e)(3)(C)(ii), courts strike a balance between deterring other incidents of piracy by these defendants and others, and not making the award such that it will put a small business out of business (at least for a first offense). See, e.g., McBroom, 2009 WL 503180 at *5; Arboleda, 2009 WL 3490859 at *7. Courts consider several factors in determining whether a defendant's willful conduct justifies increased damages: (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising of the broadcast; (4) charging of a cover charge or premiums for food and drinks; or (5) plaintiff's significant actual damages. Arboleda, 2009 WL 3490859 at *7.

Due to the nature of this case – one of default and the Defendants' failure to appear such that no discovery has been conducted – the Court finds it inappropriate to award up to $100,000 in enhanced statutory damages for what appear to be a one-time unauthorized broadcast of the UFC #104 program by a first-time offender. The record reveals that the Defendants did not charge a cover at The Purple Onion on October 24, 2009. There is no evidence of any other and/or any "repeated violations" by the Defendants. The Court cannot presume, as Plaintiff suggests, that "once the technology or plan is in place to pirate these events, they do so again and again." (Doc. 36-5 at

15

10). There is also no evidence before the Court of any additional or distinct unauthorized broadcasts of programs for which Plaintiff owns the distribution rights. Likewise, there is no evidence of substantial unlawful monetary gains and/or advertising of the broadcasted program by the Defendants. Similarly, there is no evidence as to the financial impact apart from Plaintiff's speculation that the Defendants "likely" received increased profits and better sales of food/beverages at The Purple Onion due to the broadcast. And while the Court agrees that Plaintiff "lost the licensing fee" which the Defendants would have paid (Doc. 36-5 at 11), Plaintiff's contention that it also lost the licensing fees which "neighboring establishments would otherwise have paid[]" is speculative at best. And to the extent that Plaintiff contends that enhanced damages are proper because, in general, it "has expended significant sums to combat rampant piracy," these two (2) Defendants are not responsible for all of the "significant sums" that Plaintiff has expended to combat piracy anywhere.

Nevertheless, the evidence indicates that the Defendants willfully violated Section 605 as there is no evidence indicating the program could have been accidentally intercepted and unscrambled. Additionally, upon the Clerk's entry of default, the Defendants were deemed to have admitted the allegations that they exhibited the program willfully and for commercial gain. Moreover, the Court finds that an enhanced damage award would be a deterrent to help combat future instances of piracy. As such, enhanced damages are warranted under Section 605.

Case law from district courts within the Eleventh Circuit indicate that for first time violators of Section 605(a), many courts under similar fact patterns have multiplied the amount of statutory damages awarded under Section 605(e)(3)(C)(i)(II) by three (3), to compute the amount of enhanced damages. See, e.g., Setanta Sports, 2010 WL 2432088 at *5-6; Wright, 2006 WL 4756450 at *3 n. 8;

McBroom, 2009 WL 5031580, *6; Ribeiro, 562 F. Supp. 2d at 502; Blanchard, 2010 WL 1838067 at *4-5. The Court is persuaded by this methodology.

Accordingly, because the undersigned finds that the Defendants intercepted or received an unauthorized broadcast of the October 24, 2009 UFC #104 program and willfully used same for Defendants' own commercial benefit, and because this is Defendants' first known violation of Section 605(a), it is **ORDERED** that Plaintiff's request for Section 605 enhanced damages is **GRANTED in part** and **DENIED in part** as follows: Plaintiff is awarded enhanced damages in the amount of three (3) times the award of $2,100 for a **total** of enhanced damages against the two (2) Defendants, jointly and severally, in the amount of **$6,300.**

## V.     Costs & Attorney's Fees

As provided in Section 605(e)(B)(iii), the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(B)(iii). Plaintiff seeks an award of costs and attorney's fees, jointly and severally, in the amount of $2,872.50 ($560.00 in costs and $2,312.50 in fees) against each of the Defendants, to recover fees for service of process, attorney fees and investigative expenses. Because the Defendants' liability has been established under Section 605, and Plaintiff is an aggrieved party due to its proprietary interest in the unlawfully intercepted broadcast program and has secured a default against the Defendants, the Plaintiff is entitled to the requested attorney's fees and costs under 47 U.S.C. § 605(e)(3)(B)(iii). The Court must determine whether they are reasonable under the statute.

Counsel for Plaintiff has attached a detailed time sheet and affidavit to the motion for default judgment showing that he expended 10.1 hours of time on the case at an hourly rate of $200/hour and that a paralegal expended 3.9 hours of work on the case at $75/hour for a total of $2,312.50 in

17

attorney's fees. Counsel has also attached to his affidavit documentation reflecting service of process fees related to these two (2) defendants in the amount of $210.00. Counsel asserts that he also incurred $350.00 in filing fees. Based on the foregoing, the Court is satisfied with the explanation of time expenditures and the corresponding hourly rates such that the request is reasonable. Thus, it is **ORDERED** that Plaintiff's request for an award of attorney's fees and costs in the amount of **$2,872.50,** jointly and severally against the Defendants is **GRANTED.**

VI. <u>**Conclusion**</u>

Based on the foregoing, it is hereby **ORDERED** that the Plaintiff's motion for default judgment (Doc. 36) against Defendant Fakhry Al-Shaikh (individually and as officer, director, shareholder and/or principal of AF, LLC, d/b/a The Purple Café, a/k/a Purple Café) and Defendant AF, LLC (d/b/a The Purple Café, a/k/a Purple Café) is **GRANTED in part** and **DENIED in part** as follows:

1) **GRANTED** and a **DEFAULT JUDGMENT** is entered in favor of Plaintiff and jointly and severally against Defendant Fakhry Al-Shaikh (individually and as officer, director, shareholder and/or principal of AF, LLC, d/b/a The Purple Café, a/k/a Purple Café), and Defendant AF, LLC (d/b/a The Purple Café, a/k/a Purple Café) as outlined by the terms of this Order;

2) **GRANTED in part** and **DENIED in part** as to the Plaintiff's request for Section 605(e)(3)(C)(i)(II) statutory damages, such that the Defendants are jointly and severally liable to Plaintiff for Section 605 damages in the amount of **$2,100.00;**

3) **GRANTED in part** and **DENIED in part** as to the Plaintiff's request for Section 605(e)(3)(C)(ii) enhanced damages for the Defendants' willful violation, such that the Defendants are jointly and severally liable to Plaintiff for Section 605 enhanced damages in the amount of **$6,300.00;**

and

4) **GRANTED** as to the Plaintiff's request for costs and attorney's fees

pursuant to Section 605(e)(3)(B)(iii), such that the Defendants are jointly and severally liable for the Plaintiff's costs and attorney's fees in the amount of **$2,872.50.**

The Clerk is **DIRECTED** to provide a copy of this Order to Defendant Fakhry Al-Shaikh and Defendant AF, LLC, and a copy of the Judgment which shall be issued contemporaneously herewith.

**DONE** and **ORDERED** this the **20th** day of **April 2011.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**